# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Shenzhen Aifasite Electronic Commerce Co., Ltd. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| The Partnerships And Unincorporated Associations Identified On Schedule "A" | ) ) ) ) |
| Defendants. | ) ) ) ) |

## COMPLAINT

Plaintiff, Shenzhen Aifasite Electronic Commerce Co., Ltd., a Chinese Corporation, (hereinafter, "Plaintiff" or "Aifasite") hereby brings the present action against The Partnerships And Unincorporated Associations Identified on Schedule "A" attached hereto, (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Florida, through at

1

least the fully interactive, commercial Internet stores operating under the Defendant Names/ Aliases in Schedule "A" filed under separate cover (collectively, the "Defendant Internet Stores"). Specifically, Defendants reach out to do business with Florida residents by operating one or more commercial, interactive Defendant Internet Stores through which Florida residents can purchase products bearing infringing versions of Plaintiff's federally registered Calsunbaby trademark. Each of the Defendants has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including Florida, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's federally registered trademark. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

3. Alternatively, defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## INTRODUCTION

4. This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's Calsunbaby trademark, which is covered by U.S. Trademark Registration No. 5,565,547 ("Calsunbaby Mark") for use with goods in Class 25, registered on Sep. 18, 2018. The Calsunbaby Registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the Calsunbaby Mark is attached hereto as Exhibit One.

2

5. The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. These Defendants offer for sale products under the Calsunbaby Mark with a large selection of sizes and colors to choose from, reflecting a seemingly limitless inventory of products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiff is forced to file this action to combat Defendants' infringement and/or counterfeiting of Plaintiff's registered Calsunbaby trademark as well as to protect unknowing consumers from purchasing unauthorized Calsunbaby products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable Calsunbaby trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

6. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in the United States, in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

7. Plaintiff Shenzhen Aifasite Electronic Commerce Co., Ltd., (hereinafter, "Plaintiff" or "Aifasite") is a Chinese Corporation having its principal place of business at #301, Floor 3, Building D, #3 Keji Road, Pingshan District, Shenzhen, Guangdong Province, China.

8. At all times relevant, Plaintiff has marketed and sold clothing items in Class 25 ("Calsunbaby Products") through the Amazon.com and Walmart.com e-commerce platforms utilizing the Calsunbaby Mark. Sales and revenue derived from merchandise sold under the Calsunbaby Mark have been significant.

9. Plaintiff is the owner of all rights, title and interest in and to the Calsunbaby Mark, U.S. Trademark Registration No. 5,565,547. The registration is valid, subsisting, unrevoked and uncancelled. The registration for the Calsunbaby Mark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the Calsunbaby Mark pursuant to 15 U.S.C. § 1057(b).

10. As detailed below, Plaintiff has been using the mark since January 1, 2017, in connection with the advertising and sale of Plaintiff's Products in interstate and foreign commerce, including commerce in the State of Florida and the Southern District of Florida.

11. The Calsunbaby Mark has been widely promoted, both in the United States and throughout the world.

12. Genuine products bearing the Calsunbaby Mark are distributed through Plaintiff's internet stores on the Amazon.com and Walmart.com platforms. Sales of Plaintiff's Calsunbaby products via Plaintiff's internet stores represent the majority of Plaintiff's business. The internet stores feature proprietary content, images and designs exclusive to Plaintiff.

4

13. The Calsunbaby Mark has never been assigned or licensed to any of the Defendants in this matter.

14. Plaintiff's Calsunbaby Mark is a symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

15. Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Calsunbaby Mark.

## THE DEFENDANTS

16. Plaintiff is currently unaware of the identity and/or location of Defendants. However, on information and belief, Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Florida and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores identified in Schedule "A", attached hereto. Each Defendant targets the United States, including Florida, and has offered to sell and/or has sold and/or continues to sell infringing and/or counterfeit Calsunbaby products ("Infringing Products") to consumers within the United States, including Florida and in this Judicial District.

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores including, and possibly not limited to, those listed in Schedule "A" attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

5

18. This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Exhibit Two, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

19. Further, third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Exhibit Three, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit Four, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *See* Exhibit Four at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.

*See* Exhibit Four at 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit Three at 186–187.

20. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Defendant Internet Stores to prevent discovery of their true identities and the scope of their counterfeiting and infringement network.

21. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting and infringement operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements. E-commerce stores operating as the Defendant Internet Stores, or other currently unknown aliases, include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products offered for sale by the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Infringing

7

Products were manufactured by and come from a common source and that Defendants are interrelated.

23. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Infringers and counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

25. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell the Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, knowingly and willfully used and continue to use the Calsunbaby Trademark in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

26. In sum, Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule "A" shows the use of

8

store names by the Defendant Internet Stores that have the appearance of being fabricated. Even if a company name appears to be legitimate, review of the Defendant Internet Stores reveals vague or non-existent company descriptions and descriptions of company purpose. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff's Products while they are actually selling inferior imitations of Plaintiff's Products.

27. Defendants' unauthorized use of the Calsunbaby Trademark in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into the United States, including Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## DEFENDANTS' UNLAWFUL CONDUCT

28. The success of Plaintiff's Calsunbaby brand has resulted in its counterfeiting and infringement. Plaintiff has identified numerous domain names linked to marketplace listings on certain platforms including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit and/or infringing Calsunbaby products to consumers in Florida, this Judicial District, and throughout the United States. Defendants have persisted in creating the Defendant Internet Stores.

29. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Calsunbaby products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized

9

retailer. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers. Plaintiff has not licensed or authorized Defendants to use its Calsunbaby trademark and none of the Defendants are authorized retailers of genuine Calsunbaby products.

30. Upon information and belief, Defendants also deceive unknowing consumers by using the Calsunbaby trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Calsunbaby products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Calsunbaby products.

31. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, to avoid detection, Defendants register Defendant Internet Stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule "A" to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

32. There are also similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts. In addition, the counterfeit and/or

infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit and/or infringing Calsunbaby products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. For example, Defendants use the same e-commerce platform as Plaintiff. The Defendant Internet Stores also include other notable common features on the same e-commerce platform, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, illegitimate SEO tactics, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

33. Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

34. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and vendor accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, the foreign Defendants maintain off-shore bank accounts and regularly move funds from their payment accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of payment transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court.

35. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Calsunbaby Mark in connection with the advertisement, distribution, offering for sale, and sale of counterfeit and infringing products into the United States and Florida over the Internet. Each Defendant Internet Store offers shipping to the United States, including Florida, and, on information and belief, each Defendant has offered to sell counterfeit and/or infringing Calsunbaby products into the United States, including Florida.

36. Defendants' use of the Calsunbaby Mark in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of counterfeit and infringing Calsunbaby products into Florida, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. §1114)

37. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Calsunbaby trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

39. Defendants have sold, offered to sell, marketed, distributed, and advertised, and/or are still selling, offering to sell, marketing, distributing, and advertising products in connection with the Calsunbaby Mark without Plaintiff's permission.

40. Defendants have infringed Plaintiff's rights in the Calsunbaby Mark by, among other things, using in commerce the identical and confusingly similar name "Calsunbaby" in

12

connection with the promotion, advertising, sale, offering for sale, and distribution of counterfeit Calsunbaby products.

41. Plaintiff is the exclusive owner of the Calsunbaby Mark. Plaintiff's United States Registration for the Calsunbaby Mark (Exhibit One) is in full force and effect. Plaintiff has never licensed or authorized any resellers or retailers to market, offer for sale, advertise, or distribute Calsunbaby branded products. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Calsunbaby Mark and are willfully infringing and intentionally using counterfeits of the Calsunbaby Mark. Defendants' willful, intentional and unauthorized use of the Calsunbaby Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public. Through Defendants' infringing activity, Defendants compromise the goodwill of the Calsunbaby Trademark by depriving Plaintiff of the exclusive control over the customer experience and guarantees of the brand.

42. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43. Plaintiff has no adequate remedy at law, and if Defendants' actions are not preliminarily or permanently enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Calsunbaby Mark.

44. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Calsunbaby products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

45. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit and/or infringing Calsunbaby products by Plaintiff.

47. By using the Calsunbaby trademark in connection with the sale of counterfeit and/or infringing Calsunbaby products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products. Specifically, by using the Calsunbaby brand to promote their counterfeit products, Defendants wrongfully imply to potential customers that customers can expect Defendants to conform with the customer service standards and provide any warranties or guarantees associated with the Calsunbaby brand.

48. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit Calsunbaby products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

14

a. using the Calsunbaby Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Calsunbaby product or is not authorized by Plaintiff to be sold in connection with the Calsunbaby mark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Calsunbaby product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Calsunbaby Mark;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit Calsunbaby products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Calsunbaby Mark and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's trademark, including the Calsunbaby Mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the Calsunbaby Mark;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bear the Calsunbaby Mark;

g. operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the Calsunbaby Mark;

15

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Walmart.com, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Calsunbaby Mark;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the Calsunbaby Mark; and

c. take all steps necessary to prevent links from Defendants' Internet Stores from displaying in search results, including, but not limited to, removing links to Defendants' Internet Stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of then Calsunbaby mark;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law;

6) Plaintiff demands a trial by jury;

7) Award any and all other relief that this Court deems just and proper.

Respectfully submitted this 16th of February, 2024.

/s/ Lydia Pittaway
Bar No. 0044790
Ford Banister LLC
305 Broadway - Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: lpittaway@fordbanister.com
*Attorney for Plaintiff*

17